[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11773
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 1, 2010
JOHN LEY
CLERK

Agency Nos. A099-551-187, A099-551-188

ALEJANDRO JOSE RODRIGUEZ-POMPA,
BEBSABE ASTROS-GARCIA,
ALEJANDRA RODRIGUEZ-ASTROS,
VALENTINA RODRIGUEZ-ASTROS,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 1, 2010)

Before TJOFLAT, EDMONDSON and WILSON, Circuit Judges.

PER CURIAM:

Alejandro Jose Rodriguez-Pompa, a native and citizen of Venezuela, petitions for review of the order by the Board of Immigration Appeals (BIA) that affirmed the decision of the Immigration Judge (IJ). The decision denied withholding of removal and relief under the Convention Against Torture (CAT).[1] No reversible error has been shown; we deny the petition.

We review the BIA's decision in this case because the BIA did not expressly adopt the IJ's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that we review the BIA's decision; but "[i]nsofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well"). We review de novo legal determinations of the BIA. Id. A factual determination that an alien is unentitled to relief "must be upheld if it is supported by substantial evidence." Mazariegos v. U.S. Attorney Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). To reverse a fact determination, we must conclude "that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

---

[1]Rodriguez also applied for asylum and listed his wife and two daughters as derivative beneficiaries; but the IJ determined that all four were statutorily ineligible for asylum because the asylum application had not been timely filed. And Rodriguez's wife and daughters were ineligible for derivative relief on the withholding of removal and CAT relief claims. See Delgado v. U.S. Attorney Gen., 487 F.3d 855, 862 (11th Cir. 2007). So, our decision applies only to Rodriguez.

An alien may obtain asylum if he is a "refugee," that is, a person unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including political opinion. 8 U.S.C. §§ 1101(a)(42)(A); 1158(a)(1), (b)(1). To establish asylum eligibility, the alien must, with specific and credible evidence, show (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b).

The withholding of removal standard is more stringent than the standard for asylum. See Zheng v. U.S. Attorney Gen., 451 F.3d 1287, 1292 (11th Cir. 2006). Therefore, when a petitioner fails to establish a claim of asylum on the merits, his claims for withholding of removal and CAT relief necessarily fail. Id.

Rodriguez sought relief from removal based on his opposition to the regime of President Hugo Chavez and the regime's treatment of the oil industry in Venezuela. Rodriguez worked for PDVSA, the Venezuelan national oil company; and in 2002, the government replaced the Board of Directors of PDVSA with Chavez supporters. Rodriguez participated in marches and protests against this change in the Board of Directors.[2] Members of the Bolivarian Circles (a pro-

---

[2]Rodriguez was a member of the "People of the Oil," an organization created by the employees of the oil industry to protest against Chavez.

Chavez organization) began making threatening phone calls to Rodriguez and told him that he should stop opposing the government. In December 2002, Rodriguez participated in a month-long strike of the oil industry.

In March 2003, Rodriguez's company sent him to another city in an attempt to reduce the threats against him. While there, Rodriguez continued participating in meetings and planning actions against Chavez. And he still received threatening phone calls from the Bolivarian Circles. On one occasion, when Rodriguez was leaving work, a vehicle intercepted him; and several armed men approached his car. To escape, Rodriguez put his truck in reverse and stepped on the accelerator. After this incident, Rodriguez continued working for the referendum to revoke Chavez's leadership; but the referendum failed and the Bolivarian Circles continued to threaten Rodriguez.

In May 2004, the directors of PDVSA asked Rodriguez to resign because of his participation in the strike against Chavez. Rodriguez tried to obtain other employment but was unable to do so because of his previous activities in opposition to Chavez. He left Venezuela in October 2004 because he feared the Bolivarian Circles.

The BIA agreed with the IJ that the events Rodriguez alleged did not rise to the level of past persecution and Rodriguez had not shown that it was more likely than not that he would be persecuted if he returned to Venezuela on account of his

4

protests against the government for its treatment of the oil industry. On appeal, Rodriguez argues that the incidents he alleged cumulatively established past persecution at the hands of the Bolivarian Circles.[3]

We conclude that substantial evidence supports the BIA's decision that Rodriguez did not demonstrate past persecution. We have explained that persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (citation and internal quotations omitted); see also Ruiz v. Gonzalez, 479 F.3d 762, 766 (11th Cir. 2007) (explaining that the BIA must review the cumulative effect of an applicant's events to determine whether the events cumulatively amount to past persecution). The events Rodriguez experienced -- including repeated threatening phone calls and a single encounter with the Bolivarian Circles where he was not harmed -- are insufficiently extreme to establish persecution. These incidents were isolated and amounted to mere harassment. And Rodriguez's termination from his employment and later inability

_____

[3]Rodriguez also challenges the IJ's determinations that he was not credible and that he did not establish persecution on account of a protected ground. But we review only the BIA's decision because the BIA did not expressly adopt the IJ's decision; and the BIA did not discuss the IJ's credibility or nexus determinations. See Lopez v. U.S. Attorney Gen., 504 F.3d 1341, 1344 (11th Cir. 2007) (explaining that because the IJ finding that petitioner challenged had not been adopted by the BIA, it did not form part of the order under review).

to find a job is insufficient to compel a finding of persecution. See Zheng, 451 F.3d at 1291 (concluding that petitioner's job termination did not rise to the level of persecution where petitioner failed to show how long he searched for a replacement job in the same city and provided no evidence demonstrating that he sought employment after relocating to another city).

To show a well-founded fear of future persecution, Rodriguez had to establish that his fear both was "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. "[T]he objective prong can be fulfilled . . . by establishing . . . that [petitioner] . . . has a good reason to fear future persecution." Id. (internal quotation omitted). Rodriguez has shown no such good reason. The evidence demonstrated that he made six trips in and out of Venezuela between 2003 and 2004, the time during which he received threatening phone calls and faced an armed encounter with the Bolivarian Circles. That Rodriguez felt safe enough to return back to his country many times undercuts an objective fear of future persecution.

Rodriguez's failure to establish eligibility for asylum forecloses his eligibility for withholding of removal and CAT relief. See Zheng, 451 F.3d at 1292.

PETITION DENIED.

6